# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-21-232-G-2** |
| | ) | |
| **DORIS BUCARDO MARTINEZ,** | ) | |
| **a/k/a Doris H Bucardo** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Now before the Court is the Government's Amended Proffer of Co-Conspirator Statements to be Offered Under Federal Rule of Evidence 801(d)(2)(E) (Doc. No. 106). Defendant Doris Bucardo Martinez filed a written Objection to the Government's Amended Proffer (Doc. No. 133).

Defendant has been charged with one count of conspiracy to engage in money laundering. *See* Indictment (Doc. No. 1). Specifically, Count 1 of the Indictment charges Defendant with conspiring, from approximately September 2020 through April 20, 2021, "to interdependently conduct financial transactions affecting interstate commerce in violation of Title 18, United States Code, Section 1956(h) , to wit: knowingly transporting, transmitting, or transferring, or attempting to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States, knowing that the transactions were designed with the intent to promote the carrying on of a specified unlawful activity—that is, the felonious buying, selling, and dealing in controlled substances and conspiring to do the same, in violation of Title 21,

United States Code, Sections 841(a)(1) and 846, both specified unlawful activities, in violation of Title 18, United States Code, Section 1956(a)(2)(A)." *Id.*

I.    *Procedural History*

The Government filed an initial Proffer of Co-Conspirator Statements to be Offered under Rule 801(d)(2)(E) on July 15, 2022 (Doc. No. 61). Defendant then moved for an evidentiary hearing regarding the admissibility of alleged co-conspirator statements in the Government's proffer under *United States v. James*, 590 F.2d 575 (5th Cir. 1979). *See also United States v. Owens*, 70 F.3d 118, 1123 (10th Cir. 1995).

The Court held an evidentiary hearing on the Government's proffered evidence on July 25, 2022. Defendant appeared personally and through counsel, Richard Anderson. The Government appeared through Assistant U.S. Attorneys Jason Harley and Travis Leverett. The Government presented at the hearing the testimony of Duncan Police Department Officer Suzannahe Smith, serving as a Drug Enforcement Agency ("DEA") Task Force Officer. *See* Tr. (Doc. No. 78). At the conclusion of the hearing, the Court directed the Government to file a supplemental proffer and brief in support of admission identifying the specific co-conspirator statements the Government intended to introduce at trial together with the grounds for admissibility.

On February 3, 2023, the Government filed an Amended Proffer of Co-Conspirator Statements (Doc. No. 106). Defendant, through counsel, then filed by the deadline set by the Court her Objection to certain co-conspirator statements in the Government's Amended Proffer (Doc. No. 133). Trial in this matter is scheduled to begin on June 13, 2023.

## II.    Background

Based on the testimony of TFO Smith submitted by the Government at the July 25, 2022 hearing, the Court makes the following findings of fact.

In November 2019, a DEA Task Force (the "Task Force"), which included TFO Smith, began making undercover buys of narcotics from an individual who went by "Mat from Sinaloa," who was identified as Mateo Barro Chavales.  Tr. at 10:25-11:3.  The Task Force observed Mr. Chavales visiting Plaza Latina, a market in Oklahoma City, Oklahoma, that contained a money remitter store.  *Id.* at 11:4-12.  The Task Force observed Mr. Chavales visit the money remitter store, stay for a short period of time, and then leave with a long receipt, which the Task Force identified as a money remitter receipt.  *Id.* at 11:13-21. In April 2020, the DEA intercepted phone calls between Mr. Chavales and Defendant Hector Rodriguez Filomeno,[1] discussing topics the DEA identifies as money laundering activity.[2]  *Id.* at 11:22-12:3.  Specifically, Mr. Chavales was telling Defedant Rodriguez Filomeno "how to structure the money so it could get to Mexico without being investigated."  *Id.* at 12:4-12.

The Task Force then began to investigate Plaza Latina.  The Task Force identified a company operating out of Plaza Latina called Doris Multiservicios, organized in

---

[1] Defendant Rodriguez Filomeno pled guilty in this case to Count 1 in the Indictment for conspiring to engage in international money laundering, in violation of 18 U.S.C. § 1956(h).  *See* Plea Agt. (Doc. No. 120).

[2] TFO Smith testified the "[i]n April of 2020, Las Vegas went up on a wiretap," and that "they let us know that they had identified someone based off the phone numbers that we were investigating here." *Id.* at 11:22-12:3.  The Court understands this testimony to refer to another DEA investigation team based in Las Vegas, Nevada.

September 2015 and owned by Defendant Bucardo Martinez. *Id.* at 12:13-18; *see also* Am. Proffer (Doc. No. 106) at 6-7. The Task Force determined that Doris Multiservicios operated as Intercambio Express, a money remitter service. Tr. at 12:15-21. In September 2020, Intercambios Express disabled the remitter accounts used by the operation owned by Defendant Bucardo Martinez, due to an internal investigation into potential money laundering activity. *Id.* at 12:19-13:6. Doris Multiservicios then transitioned to Maxi Money Services, a different money remitter service. *Id.* at 13:1-7.

The Task Force served a subpoena to Maxi Money Services for documentation in connection with the application in September 2020 for the Plaza Latina operation. *Id.* at 14:16-15:9. The Task Force obtained documents such as licensing agreement and contract documents that listed Defendant Bucardo Martinez as the sole proprietor, show that a background check was performed on Defendant Bucardo Martinez, and show that Defendant Bucardo Martinez was the registered agent for the money remitter service. *Id.* Defendant Rodriguez Filomeno was listed as the compliance officer in the application documents. *Id.* at 15:10-12. The Task Force determined that Defendant Bucardo Martinez and Defendant Rodriguez Filomeno present as husband and wife, though it does not appear that they are legally married. *Id.* at 14:6-11.

In September 2020, the Task Force obtained a warrant to place a wiretap on Defendant Rodriguez Filomeno's phone number. *Id.* at 13:8-10.[3] Upon obtaining the

---

[3] TFO Smith testified that the Task Force obtained permission for the wiretap "in September of '21." *Id.* The Government, however, represents in its Amended Proffer that the judicial authorization for the wiretap and bug wire, discussed herein, was obtained in September 2020. The Court accepts the Government's representation as to this date, which

wiretap, the Task Force intercepted phone calls from known Drug Trafficking Organization ("DTO") members who asked Defendant Rodriguez Filomeno to transmit money to specific individuals in Mexico, which the Task Force believed to be individuals connected to Mexico-based DTO members. *Id.* at 13:9-15. In April 2021, the Task Force installed a "bug wire" in the Plaza Latina money remitter store. *Id.* at 13:11-17. A bug wire is a camera and microphone that DEA officers physically install in an area. *Id.* at 14:18-22. The bug wire allowed the Task Force to observe and listen to conversations that were being recorded separately by the wiretap on Defendant Rodriguez Filomeno's phone. *Id.* at 13:23-14:1.

After installation of the bug wire, the Task Force observed a pattern of conduct that the Task Force identified as an ongoing conspiracy to launder illegal drug proceeds. *Id.* at 15:20-16:13. The Task Force observed that regular customers, those making legitimate transfers, would conduct their transfers through a window separating the remitter office from the rest of Plaza Latina. *Id.* at 16:5-8. DTO members, however, would be invited into the remitter office to conduct their transfers. *Id.* Specifically, the Task Force observed the following pattern: a DTO member would enter the money remitter office in Plaza Latina, hand either Defendant Rodriguez Filomeno or Defendant Bucardo Martinez a sum of money, Defendant Rodriguez Filomeno or Defendant Bucardo Martinez would place the cash into the money counter, the DTO member would then either provide multiple names of recipients or say that the names would be sent via text message or via WhatsApp

---

comports with the intercept data submitted with the Government's initial proffer. *See* Am. Proffer (Doc. No. 106) at 7; Proffer Ex. 1 (Doc. No. 61-1).

message, and then Defendant Rodriguez Filomeno  or Defendant Bucardo Martinez would complete the money transfers.  *Id.* at 16:2-13.

The Government then presented TFO Smith with numerous transcripts of phone calls recorded by the wiretap and exhibits containing text messages.  *See id.* at 17:3-76:5. TFO Smith testified that the intercepted phone calls and text messages corroborated the activity observed on the bug wire.  *See id.*  TFO Smith testified that the intercepted phone calls and text messages demonstrate that Defendant Bucardo Martinez had knowledge of and participated in the alleged conspiracy.

The Court need not summarize TFO Smith's testimony as to the exhibits in full here but will note certain examples.  In the first example, in Government Exhibit 1.12, a transcript of a phone call on September 9, 2020 between Defendant Rodriguez Filomeno and Defendant Armando Lopez Cortez[4] states as follows:[5]

> RODRIGUEZ: Look, you know that it's possible...[STAMMERS] I can make one (1) for nine-fifty (950). I'll wait for the next one (1) to be lower. I'll do it for nine (9)...one (1) for nine-eighty (980). And I'll lower the next one (1). Then I'll send you a smaller one (1)...for eight-eighty (880). And I'll come back again when...[STAMMERS] because, look, [STAMMERS] the good thing about this system is it tells me, "It's ready." It's ready to be cashed. And I can check it. It's not like before when I had to call these idiots in order to know. Now I can see it, "It says here it's ready." Then I can tell you right there, "Go and pick them up." There's another one that tells me, "It's on hold." It's on hold. Then I'll call them and I'll tell them...I'll ask them, "Listen, [STAMMERS] I want to know the problem of, of why it's

---

[4] Defendant Lopez Cortez is charged in Count 1 in the Indictment in this case.  Defendant Lopez Cortez has not appeared and his whereabout are unknown.

[5] The exhibits discussed here are transcripts of phone calls conducted in Spanish.  *See*, *e.g.*, Am. Proffer (Doc. No. 106) at 14.  DEA linguists prepared the transcripts submitted to the Court.  *See id.*

being held." And they tell me, "Oh, I wanted to confirm that they did it there and paid it there." I'll confirm it and it automatically comes up, "It's ready."

LOPEZ: Mm-hm.

RODRIGUEZ: It's even better with this system.

LOPEZ: You can do it, right, like that? Like, [U/I], like, for nine (9)...

RODRIGUEZ: Yes.

[VOICES OVERLAP]

LOPEZ: Well, for nine (9), nine-fifty (950).

RODRIGUEZ: Yes, I can do it for nine-fifty (950).

[VOICES OVERLAP]

LOPEZ: [U/I].

RODRIGUEZ: Yes.

LOPEZ: Then, [STAMMERS] I'll take you five thousand eight hundred fifty (5,850), right now.

RODRIGUEZ: Very good. Um, do me a favor.

LOPEZ: Okay.

RODRIGUEZ: [STAMMERS] Put a rubber band around it and put the amount of how much is there so that when I get there, I'll count it and verify it's exact amount you put on the paper so that we'll both be on, on the same page. Okay?

LOPEZ: That's, that's fine.

RODRIGUEZ: That's fine? Write it down for me and leave it. Since I'm not there, and Doris is going to be there, put it in a rubber band and give it her in a bag. Do you remember how you used to bring it to me before? That you would bring it in a bag and leave it to Doris?

LOPEZ: Yes, that's fine. I'll take it right now.

Gov't Proffer (Doc. No. 61-1) at 37-38; Tr. at 30:15-31:10.  DTO Smith testified that this conversation reflects Defendant Rodriguez Filomeno explaining the concept of structuring, a method of sending money in different sums over multiple transactions to avoid detection. Tr. at 27:13-24; 30:15-31:10.

In the second example, in Government Exhibit 1.38, a transcript of a phone call on October 13, 2020 between Defendant Rodriguez Filomeno and Defendant Bucardo Martinez states as follows:

BUCARDO: Did you... did you speak with that lady?

RODRIGUEZ: Which lady?

> BUCARDO: With...
> RODRIGUEZ: Yes, yes, yes. I already called her. I told her that you were sick. That possibly we could try to go tomorrow for a moment and submit it, otherwise on Thursday.
> BUCARDO: [Yawns]. Uh-huh.
> RODRIGUEZ: Um-hum. She said that was fine.
> BUCARDO: [Moans].
> RODRIGUEZ: She told me that what is happening is that the people that are going to receive that, need it to buy drugs. [Laughs]. That Oralia is a scumbag.
> BUCARDO: Um-hum.
> RODRIGUEZ: [Chuckles]. She says they are bugging her. [Pause] But I already told her that maybe for the upcoming year, we'll submit it as a Christmas present. [Chuckles].
> BUCARDO: Hm.

Gov't Proffer (Doc. No. 61-1) at 102-105; Tr. at 40:20-41:17.  TFO Smith testified that Defendant Rodriguez Filomeno typically uses the Spanish word "trafala," which the DEA translates as "scumbag" or "low life," to refer to DTO members.  Tr. at 40:20-41:17.

In the third example, in Government Exhibit 1.39, a transcript of a phone call on October 13, 2020 between Defendant Rodriguez Filomeno and Defendant Bucardo Martinez states as follows:

> RODRIGUEZ: So, then "El Guero" (the light-skinned guy) is going to be upset but I was not able to do the wires for him. [Pause]
> BUCARDO: Mm. [Pause] And those (people) of the wires, happy with the bunch of money that was sent?
> RODRIGUEZ: Absolutely. Mm-hm. So, then-
> BUCARDO: Oh, but you should tell...
> RODRIGUEZ: Tomorrow, I am, tomorrow I am going to have to come and do this two (2) for this guy.

Gov't Proffer (Doc. No. 61-1) at 106-109; Tr. at 41:18-42:15.  TFO Smith testified that the DEA has identified "Guero" as an alias for a DTO member but has not been able to identify his full name.  Tr. at 42:3-15.  TFO Smith testified that they observed the individual known

as "Guero" on the bug wire in the Plaza Latina remitter office, and that "Guero" was a frequent customer of the remitter office. *Id.*

### III.   Discussion

#### A.   Legal Standards

Federal Rule of Evidence 801(d)(2)(E) prescribes that a statement is not hearsay if the statement is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "Before admitting statements into evidence under the coconspirator exception to the hearsay rule, the district court must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017). Whether the 801(d)(2)(E) standard is satisfied is a "preliminary question," and the Court "[i]n making its determination . . . is not bound by the rules of evidence except those with respect to privileges." *Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987) (quoting Fed. R. Evid. 104(a)). "The court may consider both independent evidence and the statements themselves when making this finding." *United States v. Rutland*, 705 F.3d 1238, 1248 (10th Cir. 2013).

"To prove a conspiracy existed, the district court must find by a preponderance of the evidence that (1) there was an agreement to violate the law, (2) the declarant knew the essential objectives of the conspiracy, (3) the declarant knowingly and voluntarily took part in the conspiracy, and (4) the coconspirators were interdependent." *Id.* at 1249. The Tenth

Circuit has explained "that because a criminal conspiracy by its very nature is usually shrouded in a further conspiracy of silence, the common plan or purpose must often be, and may legitimately be, proved by circumstantial evidence." *United States v. Pickel*, 863 F.3d 1240, 1252 (10th Cir. 2017) (internal quotation marks omitted).  "A conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy, but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator."  *Id.* (internal quotation marks omitted).  To prove participation, "the evidence need only show that the defendant played a minor role in the conspiracy to make him a co-conspirator."  *Id.* "Regarding interdependence, the fourth conspiracy element, the evidence must show the coconspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged."  *Id.* at 1252-53 (alterations and internal quotation marks omitted).

"A statement is in made in furtherance of a conspiracy when it is intended to promote the conspiratorial objectives."  *Rutland*, 705 F.3d at 1252 (internal quotation marks omitted).  "We have found the following sorts of statements to be in furtherance of a conspiracy: (1) statements explaining events of importance to the conspiracy, (2) statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy; (3) statements identifying a fellow coconspirator; and (4) discussions of future intent that set transactions to the conspiracy in motion or that maintain the flow of information among conspiracy members."  *Id.* (internal citations and quotation marks

omitted).   "Mere narrative declarations of past events, however, are not in furtherance."
*Id.* (internal quotation marks omitted).

    *B.   Analysis*

        *1.   Existence and Participation in a Conspiracy*

    The Court finds by a preponderance of the evidence that a conspiracy to engage in international money laundering existed.   The Government has brought forth sufficient evidence at this stage to conclude that it is more likely than not that Defendant Rodriguez Filomeno and Defendant Bucardo Martinez, among others, engaged in a common plan or scheme to assist DTO members in sending proceeds from drug trafficking operations in the United States to Mexico.   Based on the testimony of TFO Smith, the Court finds that Defendant Rodriguez Filomeno and Defendant Bucardo Martinez accomplished this goal by using the Maxi Money Service accounts registered in Defendant Bucardo Martinez's name to execute financial transactions in a manner designed to avoid detection and conceal the nature, source, and control of the drug trafficking proceeds.

    In her Objection, Defendant Bucardo Martinez does not contest the existence of a money laundering conspiracy or contest that Defendant Rodriguez Filomeno engaged in a "money laundering endeavor."   Objection (Doc. No. 133) at 2; *see also* Tr. at 117:1-7 (Defendant's counsel conceding that "the government has established a conspiracy involving certain individuals.").   Defendant instead argues that Defendant Bucardo Martinez was an unwitting participant and did not knowingly transfer drug trafficking proceeds.

For the purpose of this preliminary question, the Court finds that there is sufficient evidence to conclude that it is more likely than not that Defendant Bucardo Martinez knew of the objective of the conspiracy—to transmit drug trafficking proceeds to DTO members or affiliates in Mexico—and that she voluntarily participated in the conspiracy with her spouse, Defendant Rodriguez Filomeno.  There is ample evidence that Defendant Bucardo Martinez was personally involved in the day-to-day operations of the money remitter business, for which she was the sole owner, and that she personally facilitated transactions on behalf of DTO members and affiliates.  *See*, *e.g.*, Tr. 14:16-16:13; 30:15-31:10; 40:20-42:15.  While it may be true that Defendant Rodriguez Filomeno may have played a larger role in the conspiracy, "the evidence need only show that the defendant played a minor role in the conspiracy to make [her] a co-conspirator."  *Pickel*, 863 F.3d at 1252.

### 2.   *Statements in Furtherance of a Conspiracy*

The Government represents in its Amended Proffer that it intends to offer co-conspirator statements in 21 intercepted phone calls[6] and 19 intercepted text message conversations[7] from Defendant Rodriguez Filomeno's phone.  The Government also represents that it intends to call Norma Lyles, a former Plaza Latina employee, who will testify as to statements made by Defendant Rodriguez Filomeno.

Upon review of the call transcripts and text messages the Government intends to offer, the Court finds by a preponderance of the evidence that the statements in these

---

[6] *See* Am. Proffer (Doc. No. 106) at 11-24; Proffer Ex.1 (Doc. No. 61-6).

[7] *See* Am. Proffer (Doc. No. 106) at 24-31; Proffer Ex. 3 (Doc. No. 61-3).

exhibits by Defendant Rodriguez Filomeno are statements by a co-conspirator in furtherance of the conspiracy.[8]  The call transcript and text message exhibits reflect statements by Defendant Rodriguez Filomeno explaining how he and others were using the money remitter service at Plaza Latina to launder money, discussing the details of individual transactions and the identity of recipients, providing instructions to others on how to engage in money laundering transactions though the Plaza Latina money remitter, and discussing how to resolve problems and issues to facilitate further transactions.

Regarding the statements of any other declarant speaking in the intercepted calls and text messages, the Court finds that the Government does not sufficiently establish, at this preliminary stage with independent evidence, that each of the other declarants are members of the conspiracy.  While the exhibits of the transcripts and text messages do tend to show that these individuals speaking with Defendant Rodriguez Filomeno are engaged in drug trafficking activity, including several who have been convicted of or pled to drug trafficking offenses in this case and separate cases, the Government must establish their awareness of, participation in, and their interdependence in the conspiracy charged here. To the extent the Government is offering such statements for the truth of the matter asserted, the Government therefore will need to establish a factual foundation that the declarant is a member of the conspiracy at trial—or invoke another rule that would allow admission of the statements.

---

[8] Statements made by Defendant Bucardo Martinez may be offered by the Government under Federal Rule of Evidence 801(d)(2)(A) as a statement made by an opposing party.

Lastly, the Government represents that it expects Ms. Lyles will testify as to statements made by Defendant Rodriguez Filomeno in one or more dinner conversations with her and Defendant Bucardo Martinez present regarding the way in which Defendant Rodriguez Filomeno had facilitated transactions on behalf of DTO members.  The Court is not convinced, based on the Government's Amended Proffer, that Defendant Rodriguez Filomeno's "recitation" of "their illegal activities" qualifies as statements made in furtherance of the conspiracy.  *Rutland*, 705 F.3d at 1252 ("Mere narrative declarations of past events, however, are not in furtherance." (internal quotation marks omitted)).

CONCLUSION

In accordance with the foregoing discussion, the Court finds the Government may offer into evidence the statements in the exhibits set forth in the Government's Amended Proffer made by Defendant Rodriguez Filomeno under Federal Rule of Evidence 801(d)(2)(E).  Defendant Bucardo Martinez's objection to these statements on the basis that Defendant Bucardo Martinez is not part of the conspiracy, that these statements do not expressly reference Defendant Bucardo Martinez, and that these statements were made outside of her knowledge are OVERRULED.

The Court reserves ruling on Defendant Bucardo Martinez's objections that the Government has not established that statements by declarants other than Defendant Rodriguez Filomeno are admissible as statements of co-participants in the conspiracy.

Lastly, the Court preliminarily sustains Defendant's objection to Ms. Lyles' expected testimony as to statements made by Defendant Rodriguez Filomeno.  The Government may re-urge admission of this evidence at trial.

IT IS SO ORDERED this 10th day of June, 2023.

CHARLES B. GOODWIN
United States District Judge